IN THE MATTER OF: APPEAL OF IBM CREDIT CORPORATION FROM THE DECISION OF THE DURHAM COUNTY BOARD OF COUNTY COMMISSIONERS CONCERNING THE VALUATION AND TAXATION OF PERSONAL PROPERTY FOR TAX YEAR 2001

No. COA06-1002

(Filed 2 October 2007)

**Taxation— business personal property tax—leased computer equipment—valuation—burden of proof**

The Property Tax Commission erred by upholding a county's valuation of 40,779 pieces of leased computer equipment for business personal property taxes in tax year 2001 based on an improper application of the burden of proof framework mandated by our Supreme Court, and the case is remanded so that the Commission may reconsider the evidence in light of the proper burdens of production and persuasion, because: (1) *Southern Railway*, 313 N.C. 177 (1985), clarifies that the burden upon the aggrieved taxpayer is one of production and not persuasion; (2) the Commission imposed a burden of persuasion on IBM Credit rather than a burden of production; (3) although the Commission required in a conclusion of law that IBM Credit produce evidence to show that the county's valuation method was arbitrary and capricious, *AMP*, 287 N.C. 547 (1975), only required the production of evidence that tends to show that the method was arbitrary and capricious; (4) given three improper articulations placing a burden of proof on IBM Credit, it cannot be determined that the Commission applied the proper burden-shifting framework; and (5) it cannot be determined with certainty whether the Commission's misunderstanding of the relevant burdens affected its findings and conclusions.

Judge TYSON dissenting.

Appeal by taxpayer from final decision entered 30 March 2006 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 7 March 2007.

*Manning Fulton & Skinner P.A., by Michael T. Medford and Judson A. Welborn, for taxpayer-appellant.*

*Durham County Attorney S. C. Kitchen for respondent-appellee.*

GEER, Judge.

IBM Credit Corporation appeals from a final decision of the Property Tax Commission upholding Durham County's valuation of 40,779 pieces of leased computer equipment for business personal property taxes in tax year 2001. IBM Credit contends that the County's valuation exceeds the equipment's "true value in money" in violation of N.C. Gen. Stat. § 105-283 (2005). IBM Credit also argues, however, that the Commission did not properly apply the burden of proof framework mandated by our Supreme Court. Because we agree with this latter contention, we do not address IBM Credit's arguments regarding § 105-283, but instead remand this matter so that the Commission may reconsider the evidence in light of the proper burdens of production and persuasion.

### Facts

The leased equipment at issue in this case falls into four categories: mainframe computers, mid-range computers, personal computers, and peripheral equipment such as printers and storage devices. Generally, the leasing process was structured so that the IBM Credit customer would negotiate an acquisition price for a particular item with a vendor. IBM Credit would then purchase the item at the price negotiated between the customer and the vendor. After acquiring the equipment, IBM Credit would in turn lease it to the customer, typically for a period of three years, in exchange for monthly payments. IBM Credit would retain whatever residual value the equipment retained at the end of the lease term.

To assess the value of the 40,779 pieces of computer equipment, Durham County used Schedule U5 of the 2001 Cost Index and Depreciation Schedules published by the North Carolina Department of Revenue. The Department of Revenue developed Schedule U5 to assist county tax assessors in determining the value of used computers and computer-related equipment. Based on the depreciation tables of Schedule U5, Durham County determined the value of IBM Credit's equipment to be $144,277,140.00.

On 25 January 2002, IBM Credit sought a hearing before the Property Tax Commission to challenge Durham County's valuation. In its application, IBM Credit contended that the value of its equipment was only $96,458,707.00. On 30 March 2006, following an evidentiary hearing, the Commission entered its final decision, rejecting IBM Credit's valuation of $96,458,707.00 and upholding Durham County's

valuation of $144,277,140.00. IBM Credit gave timely notice of appeal to this Court.

## Discussion

On appeal, IBM Credit strenuously argues that Durham County's reliance on the state-promulgated Schedule U5 violates N.C. Gen. Stat. § 105-283, which requires that "[a]ll property, real and personal, shall as far as practicable be appraised or valued at its true value in money." The statute further provides:

> When used in this Subchapter, the words "true value" shall be interpreted as meaning *market value*, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

N.C. Gen. Stat. § 105-283 (emphasis added). IBM Credit contends that use of Schedule U5 is unlawful in this instance, because it is not based on transactional information from the marketplace and thus does not lead to a determination of actual "market value," as required by § 105-283.

IBM Credit also argues, however, that the Commission's decision includes a "mistaken conclusion of law that the burden of proof rested solely on IBM Credit." We address this issue first since, if the Commission did err with respect to the burden of proof, then its findings of fact could be affected by the misapprehension of the law. *See N.C. Dep't of Justice v. Eaker*, 90 N.C. App. 30, 36-37, 367 S.E.2d 392, 397 (remanding when State Personnel Commission made its findings under a misapprehension of law regarding proper burden of proof), *disc. review denied*, 322 N.C. 836, 371 S.E.2d 279 (1988), *overruled on other grounds by Batten v. N.C. Dep't of Corr.*, 326 N.C. 338, 389 S.E.2d 35 (1990).

In *In re Appeal of AMP, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975), our Supreme Court held that it is "a sound and a fundamental principle of law in this State that ad valorem tax assessments are presumed to be correct." A taxpayer may rebut this presumption by "produc[ing] competent, material and substantial evidence that tends to show that: (1) Either the county tax supervisor used an arbitrary method of valuation; or (2) the county tax supervisor used an illegal method of valuation; AND (3) the assessment substantially

exceeded the true value in money of the property." *Id.* at 563, 215 S.E.2d at 762 (emphasis omitted) (internal quotation marks omitted).

In *In re Appeal of S. Ry. Co.*, 313 N.C. 177, 328 S.E.2d 235 (1985), the Supreme Court explained further that once a taxpayer produces the evidence required by *AMP*, the burden of proof then shifts to the taxing authority: "The burden of going forward with evidence and of persuasion that its methods would in fact produce true values then rest[s] with the [taxing authority]." *Id.* at 182, 328 S.E.2d at 239. *Southern Railway* involved a challenge by two railroad companies to the Department of Revenue's appraisal of the companies' market value. *Id.* at 178-79, 328 S.E.2d at 237. According to the Supreme Court:

> When the Railroads offered evidence that the appraisal methods used by the Department would not produce true values for the Railroads and that the values actually produced by these methods were substantially in excess of true value, they rebutted the presumption of correctness. The burden of going forward with evidence and of persuasion that its methods would in fact produce true values then rested with the Department. And it became the Commission's duty to hear the evidence of both sides, to determine its weight and sufficiency and the credibility of witnesses, to draw inferences, and to appraise conflicting and circumstantial evidence, all in order to determine whether the Department met its burden.

*Id.* at 182, 328 S.E.2d at 239.

*Southern Railway* thus clarifies that the burden upon the aggrieved taxpayer, set forth in *AMP*, is one of production and not persuasion: the taxpayer must offer evidence that the government's appraisal relies on illegal or arbitrary valuation methods. Other decisions of the North Carolina appellate courts are consistent on this point. *See In re Appeal of the Greens of Pine Glen Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003) ("a taxpayer may rebut th[e] [*AMP*] presumption if it *produces* 'competent, material and substantial' evidence . . ." (emphasis added)); *In re Appeal of Murray*, 179 N.C. App. 780, 783, 635 S.E.2d 477, 479 (2006) ("To rebut th[e] [*AMP*] presumption, the taxpayer must *produce* 'competent, material and substantial' evidence . . . ." (emphasis added)); *In re Appeal of Lane Co.*, 153 N.C. App. 119, 127, 571 S.E.2d 224, 229 (2002) ("the substantial rights afforded by the presumption of correctness are lost when the taxpayer *offers* substantial rebutting evidence" (emphasis added)). Indeed, *AMP* itself states that "for the taxpayer to rebut the

presumption he must *produce* 'competent, material and substantial' evidence that *tends to show*" an arbitrary or illegal method of valuation. 287 N.C. at 563, 215 S.E.2d at 762 (emphasis added).

In this case, the Commission's decision does not reflect this burden shifting. In the opening "Statement of Facts and Case" contained in the decision below, the Commission stated: "In order to rebut the presumption of correctness, the taxpayer *must prove* that Durham County used an arbitrary or illegal method of valuation and that the assessment of the subject property substantially exceeded the true value in money of the property as of January 1, 2001." (Emphasis added.) In addition, in the section discussing the issues presented by the hearing, the Commission, after citing *AMP*, stated that "IBM Credit *has the burden of establishing*: 1. The County employed an arbitrary or illegal method of appraisal . . . ." (Emphasis added.) Conclusion of Law 3 of the decision contains substantially the same articulation of the burden of proof: "In order for the taxpayer to rebut the presumption of correctness, the taxpayer *must prove* that the county tax assessor employed an arbitrary or illegal method of valuation and that the assessment of the property *substantially* exceeded the true value in money of the subject property." (First emphasis added.)

In these three statements, the Commission has imposed a burden of persuasion on IBM Credit rather than a burden of production, contrary to the express requirements of *Southern Railway*. Curiously, the Commission never referred to the Supreme Court's decision in *Southern Railway*, although it did reference the Court of Appeals decision in that case, indicating that the Court of Appeals opinion had been reversed "on other grounds."

In Conclusion of Law 9, the Commission does state: "IBM Credit did not produce competent, material and substantial evidence *to show* that Durham County employed an arbitrary or illegal method of valuation to determine the valuation of subject business personal property. IBM Credit *failed to show* that use of the Department of Revenue's Cost Index and Depreciation Schedules for computer and computer-related equipment resulted in a valuation that *substantially* exceeded the true value in money of the subject property for tax year 2001." (First two emphases added.) Although this conclusion substantially parrots *AMP*, it differs from *AMP* in a significant way.

The Commission—consistent with its earlier stated view that a burden of proof rested on IBM Credit—required in this conclusion of

law that IBM Credit produce evidence "to show" that Durham County's valuation method was arbitrary and capricious. *AMP*, however, only requires the production of evidence that "tends to show" that the method was arbitrary and capricious. 287 N.C. at 563, 215 S.E.2d at 762. Thus, even in Conclusion of Law 9, the Commission has placed a burden of proof on IBM Credit rather than a burden of production. In any event, given the prior three articulations improperly placing a burden of proof on IBM Credit, we cannot be assured by this single ambiguous statement that the Commission applied the burden-shifting framework mandated by *Southern Railway*, especially given the Commission's failure to reference that opinion.

N.C. Gen. Stat. § 105-345.2(b) (2005) sets forth the applicable scope of review in this case and requires this Court, "[s]o far as necessary to the decision and where presented . . . [to] decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning and applicability of the terms of any Commission action." After deciding essential questions of law, this Court is authorized, if necessary, to "remand the case for further proceedings." *Id.*

We believe it is necessary to remand this case so that the Commission may apply the proper burden of proof framework. As this Court stated in a similar context:

> Because the [State Personnel] Commission acted under a misapprehension of the law, this case must be remanded. *The rule fixing the burden of proof constitutes a substantial right of the party upon whose adversary the burden rests and must be rigidly enforced.* The law relating to the burden of proof is equally applicable to proceedings which are not conducted before a jury. We cannot say, as a matter of law, that the Commission's finding was not affected by its misapprehension of the law. Therefore, we vacate the findings and conclusions and remand this case to the Commission for reconsideration of the evidence in additional proceedings in which petitioner has the burden of proof.

*Eaker*, 90 N.C. App. at 36-37, 367 S.E.2d at 397 (emphasis added) (internal citations omitted). Here, too, we cannot determine with certainty whether the Commission's misunderstanding of the relevant burdens set forth in *AMP* and *Southern Railway* affected its findings and conclusions.

**IN RE APPEAL OF IBM CREDIT CORP.**

[186 N.C. App. 223 (2007)]

Therefore, we remand this case to the Property Tax Commission for reconsideration of the evidence in accord with this opinion. Given our resolution of this appeal, we do not address IBM Credit's remaining arguments.

Remanded.

Judge ELMORE concurs.

Judge TYSON dissents in a separate opinion.

TYSON, Judge dissenting.

The majority's opinion holds the Commission erroneously imposed a burden of persuasion on IBM Credit rather than a burden of production, contrary to the express requirements of *In re Southern Railway*, 313 N.C. 177, 328 S.E.2d 235 (1985). The majority's opinion argues the Commission impermissibly placed the burden of proof on IBM Credit. I disagree and vote to affirm the Commission's final decision. I respectfully dissent.

## I. Standard of Review

This Court reviews the Commission's decision under the whole record test. The whole record test is *not a tool of judicial intrusion* and this Court only considers whether the Commission's decision has a rational basis in the evidence. *We may not substitute our judgment for that of the Commission even when reasonably conflicting views of the evidence exist.*

*In re Weaver Inv. Co.*, 165 N.C. App. 198, 201, 598 S.E.2d 591, 593 (emphasis supplied) (internal citations and quotations omitted), *disc. rev. denied*, 359 N.C. 188, 606 S.E.2d 695 (2004).

## II. Burden on the Taxpayer

The majority's opinion holds the Commission's final decision impermissibly placed the burden of proof on IBM Credit by stating in their findings and conclusions: (1) "In order to rebut the presumption of correctness, the taxpayer *must prove* that Durham County used an arbitrary or illegal method of valuation and that the assessment of the subject property substantially exceeded the true value in money of the subject property;" (2) IBM Credit *failed to show* that use of the Department of Revenue's Cost Index and Depreciation Schedules for computer and computer related equipment resulted in a valuation

that substantially exceeded the true value in money of the subject property for tax year 2001;" and (3) "IBM has *the burden of establishing*: 1. [t]he County employed an arbitrary or illegal method of appraisal, and 2. [t]he value assigned by the County Board was substantially greater than the true value in money of the property as of January 1 for the year at issue." (Emphasis supplied).

The majority's opinion asserts the words, "must prove," "failed to show," and "burden of establishing," charged IBM Credit with and increased the burden of persuasion. I disagree.

Our Supreme Court has held it is "a sound and a fundamental principle of law in this State that ad valorem tax assessments are presumed to be correct." *In re Appeal of AMP, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). "As a result of this presumption, when such assessments are attacked or challenged, the burden of proof is on the taxpayer *to show* that the assessment was erroneous." *Id.* at 562, 215 S.E.2d at 762 (emphasis supplied).

> [T]o rebut this presumption [the taxpayer] *must* produce competent, material and substantial evidence that *tends to show* that: (1) Either the county tax supervisor used an arbitrary method of valuation; or (2) the county tax supervisor used an illegal method of valuation; and (3) the assessment substantially exceeded the true value in money of the property.

*Id.* at 563, 215 S.E.2d at 762 (emphasis supplied) (internal quotations omitted).

The standard articulated in *In re Appeal of AMP, Inc.* places the burden of proof upon the taxpayer "to show" that the assessment was erroneous. The word "show" is defined as "[t]o make (facts, etc.) apparent or clear by evidence; *to prove*." *Black's Law Dictionary* (8th ed. 2004) (emphasis supplied). Following this definition, the *AMP* standard could be read as "the burden is on the taxpayer *to prove* that the assessment was erroneous" and the "taxpayer must produce evidence that *tends to prove*" the essential factors needed.

Our Supreme Court has used similar language to the Commission's findings and conclusions in articulating the *AMP* standard. In *In re McElwee*, our Supreme Court stated, "the taxpayer has the *burden of showing* that the assessment was erroneous." 304 N.C. 68, 72, 283 S.E.2d 115, 120 (1981) (emphasis supplied).

> [T]he presumption is that the county acted with regularity in the valuation process, and the burden is upon the taxpayer *to show*

otherwise. At this point, the taxpayer *must show* by competent, material and substantial evidence that one of the first two tests enunciated in *Amp* has not been met, *i.e.*, either that the county employed an arbitrary or an illegal method of valuation.

*Id.* at 86, 283 S.E.2d at 126 (emphasis supplied).

In its final decision, the Commission used substantially similar language to that enunciated by our Supreme Court to place the burden on the taxpayer to overcome the presumption that the assessment by the Commission was lawful, correct, and not arbitrary. The Commission did not impermissibly shift the burden of persuasion and properly held IBM Credit failed to overcome the presumption of correctness of Durham County's valuation. The final decision should be affirmed.

### III.  Presumption of Correctness

IBM Credit argues the Commission erred by concluding it did not produce competent, material, and substantial evidence to show Durham County employed an arbitrary or illegal method of valuation to determine the value of the property and the assessment substantially exceeded the true value in money of the property. I disagree.

"The North Carolina General Assembly has adopted market value or true value in money as the uniform appraisal standard for valuation of property for tax purposes." *Electric Membership Corp. v. Alexander*, 282 N.C. 402, 408-09, 192 S.E.2d 811, 816 (1972) (internal citations and quotations omitted).

N.C. Gen. Stat. § 105-283 (2005), in relevant part, states:

All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words "true value" shall be interpreted as meaning market value, that is, the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

IBM Credit argues Durham County's use of the North Carolina Department of Revenue U-5 Schedule for valuation of their property was illegal because Durham County did not determine actual marketplace value as required by the statute.

IN RE APPEAL OF IBM CREDIT CORP.

[186 N.C. App. 223 (2007)]

As discussed above, "[A]d valorem tax assessments are presumed to be correct. As a result of this presumption, when such assessments are attacked or challenged, the burden of proof is on the taxpayer to show that the assessment was erroneous." *In re Appeal of AMP, Inc.,* 287 N.C. at 562, 215 S.E.2d at 761-62.

> The purpose underlying this presumption of correctness arises out of the obvious futility of allowing a taxpayer to fix the final value of his property for purposes of ad valorem taxation. If the presumption did not attach, then every taxpayer would have unlimited freedom to challenge the valuation placed upon his property, regardless of the merit of such challenge.

*Id.* at 563, 215 S.E.2d 762 (internal citations omitted). To overcome this presumption, the taxpayer must "produce competent, material and substantial evidence that tends to show that: (1) Either the county tax supervisor used an arbitrary method of valuation; or (2) the county tax supervisor used an illegal method of valuation; and (3) the assessment substantially exceeded the true value in money of the property." *Id.* at 563, 215 S.E.2d at 762. "[It] is the function of the [Commission] to determine the weight and sufficiency of the evidence and the credibility of the witnesses, to draw inferences from the facts, and to appraise conflicting and circumstantial evidence." *In re McElwee,* 304 N.C. at 87, 283 S.E.2d at 126-27. This Court "cannot substitute [its] judgment for that of the agency when the evidence is conflicting." *Id.*

## IV.  Conclusion

It is incumbent upon IBM Credit to "show" or prove to the Commission that Durham County's valuation of its property was not equivalent to the actual value or true value of the property. *In re Appeal of AMP, Inc.,* 287 N.C. at 563, 215 S.E.2d at 762. The Commission found IBM Credit presented no credible evidence of the actual fair market value of its property.

The Commission correctly held that IBM Credit failed to present evidence to show and overcome the presumption of correctness and affirmed Durham County's valuation. The presumption exists to prevent taxpayers from setting their own values to reduce their tax liability, which "increases the tax burden borne by others." *In re Appeal of Worley,* 93 N.C. App. 191, 195, 377 S.E.2d 270, 273 (1989). In light of IBM Credit's failure to overcome the presumption of correctness, no burden was shifted to Durham County. The Commission's final decision should be affirmed. I respectfully dissent.