IN RE APPEAL OF TILLMAN

[187 N.C. App. 739 (2007)]

━━━━━━━━━━

IN THE MATTER OF: APPEAL OF ROLLIE AND MARY W. TILLMAN FROM THE DECISION OF DURHAM COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE VALUATION AND TAXATION OF CERTAIN REAL PROPERTY FOR TAX YEAR 2005

No. COA07-555

(Filed 18 December 2007)

**Taxes— ad valorem—valuation—membership in continuing care community**

The value of a membership fee was properly included in the assessed ad valorem tax value of a condominium in a residential continuing care community. Membership in the community's club was an express requirement of owning real property there, and the property could not be purchased or sold without including the membership fee in the price of the property.

Appeal by taxpayers Rollie and Mary W. Tillman from final decision entered 26 January 2007 by Chairman Terry L. Wheeler for the North Carolina Property Tax Commission. Heard in the Court of Appeals 15 November 2007.

*Kennon, Craver, Belo, Craig & McKee, PLLC, by Joel M. Craig, for taxpayers-appellants.*

*Durham County Attorney S.C. Kitchen and Assistant County Attorney Curtis Massey, for appellee Durham County Board of Equalization and Review.*

TYSON, Judge.

Rollie and Mary Tillman ("the Tillmans") appeal from a final decision of the North Carolina Property Tax Commission ("Commission"), which affirmed Durham County's assessed value of their residence for *ad valorem* taxes for the 2005 tax year. We affirm.

## I. Background

The Tillmans' residence is located at 421 Cedar Berry Lane in Chapel Hill, North Carolina. The subject property is a condominium unit located in The Cedars of Chapel Hill ("the Cedars"), an adult residential continuing care retirement community. Residents of the Cedars are afforded a wide range of amenities such as "a full-service clubhouse and [an] on-site Health Care Center offering skilled nursing care and assisted living." The Tillmans chose to reside in this community because the Cedars is a licensed health facility and because of the availability of a membership in The Cedars of Chapel Hill Club, Inc. ("the Cedars Club"). The Cedars Club provides residents with a full complement of services including dining, recreation, laundry, housekeeping, security, and transportation.

On 11 October 2002, the Tillmans signed the Reservation Agreement to purchase the subject property for a total purchase price of $456,000.00. The purchase price included a non-refundable membership fee of $45,600.00, an amount equal to ten percent of the purchase price. The Reservation Agreement stated, "[m]embership in the [Cedars] Club [is an] integral part of purchase." The Reservation Agreement further stated, "[e]ach such Owner or the approved designee *must acquire* Membership simultaneously with the purchase of a Unit and each Member *shall* execute the Cedars Membership Agreement." (Emphasis supplied). Both the Reservation Agreement and the Membership Agreement were signed by the Tillmans and contained provisions clearly stating that membership in the Cedars Club is a requirement of ownership and residency in the Cedars retirement community. Additionally, the deed sets forth a provision requiring the Tillmans "to collect upon resale of the said Unit a membership fee payable to said Club in the amount of [] ten percent (10%) of the gross sales price."

The Durham County Tax Assessor assessed the Tillmans' residence at a total value of $447,994.00 for the 2005 tax year, approximately $8,000.00 less than the contract purchase price. The Tillmans challenged Durham County's assessment by filing an appeal with the Durham County Board of Equalization and Review ("the County

Board"). On 16 June 2005, the County Board issued its decision and affirmed the $447,994.00 assessment of the Tillmans' residence.

The Tillmans appealed the Board's decision to the Commission and argued "the County Board employed an arbitrary and illegal method of appraisal in reaching the assessed value assigned to the subject property" and "the inclusion of the value of the [m]embership fee resulted in assignment of a value to the subject property which substantially exceeded its true value."

On 26 January 2007, following a two day hearing, the Commission entered its final decision and affirmed the decision of the County Board. The Commission made the following findings of fact, *inter alia*:

8. [T]hat the purchase of the subject residence requires that it be coupled with the rights, privileges and responsibilities of membership in the Cedars Club . . . and that by accepting the deed to the property, the [Tillmans][] agree to comply with the bylaws of The Cedars Club and pay assessments that include a membership fee in the amount of ten percent (10%) of the purchase price.

9. The membership fee is calculated on the sale price or market value (as determined by an appraisal) and the "Required Membership" as designated in the Membership Agreement [] is a benefit and right of ownership of the property that the [Tillmans] acquired when they purchased the subject property. . . .

The Commission concluded that the Tillmans had failed to show by competent, material, and substantial evidence that: (1) the subject property was not properly appraised; (2) Durham County employed an arbitrary or illegal method of appraisal; or (3) the County Board assigned a value that substantially exceeded the true value in money of the subject property. The Tillmans appeal.

## II. Issues

The Tillmans argue the Commission erred by concluding the cost of a membership in a continuing care retirement community may be included in the assessed value of real property and is subject to *ad valorem* taxation.

## III. Standard of Review

This Court reviews the Commission's decision under the whole record test. The whole record test is not a tool of judicial intru-

sion and this Court only considers whether the Commission's decision has a rational basis in the evidence. We may not substitute our judgment for that of the Commission even when reasonably conflicting views of the evidence exist.

*In re Appeal of Weaver Inv. Co.*, 165 N.C. App. 198, 201, 598 S.E.2d 591, 593 (internal citations and quotations omitted), *disc. rev. denied*, 359 N.C. 188, 606 S.E.2d 695 (2004).

"[A]d *valorem* tax assessments are presumed to be correct . . . . As a result of this presumption, when such assessments are attacked or challenged, the burden of proof is on the taxpayer to show that the assessment was erroneous." *In re Appeal of AMP, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761-62 (1975) (internal citations and quotations omitted). To overcome this presumption, the taxpayer must "produce competent, material and substantial evidence that tends to show that: (1) [e]ither the county tax supervisor used an *arbitrary method* of valuation; or (2) the county tax supervisor used an *illegal method* of valuation; and (3) the assessment *substantially* exceeded the true value in money of the property." *Id.* at 563, 215 S.E.2d at 762 (emphasis in original) (citation omitted). "If a taxpayer fails to present evidence sufficient to meet its burden as to either prong, the appeal fails." *In re Appeal of The Greens of Pine Glen Ltd. Part.*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003).

## IV. *Ad Valorem* Taxation

The Tillmans argue the Durham County Tax Assessor used an illegal appraisal method when the assessed value included the non-refundable membership fee. The Tillmans also argue this assessment valued the property substantially in excess of its "true value." We disagree.

All property, real and personal is subject to taxation unless it is excluded or exempt by statute. N.C. Gen. Stat. § 105-274 (2005). As a threshold issue, we must determine whether the non-refundable membership fee required to be paid at the purchase and sale of real property is subject to *ad valorem* taxation pursuant to N.C. Gen. Stat. § 105-274. The Tillmans argue the membership fee is intangible personal property which is generally excluded from *ad valorem* taxation pursuant to N.C. Gen. Stat. § 105-275(31) (2005). We disagree.

"The North Carolina General Assembly has adopted market value or true value in money as the uniform appraisal standard for valua-

**IN RE APPEAL OF TILLMAN**

[187 N.C. App. 739 (2007)]

tion of property for tax purposes." *Electric Membership Corp. v. Alexander*, 282 N.C. 402, 408-09, 192 S.E.2d 811, 816 (1972) (internal citations and quotations omitted). N.C. Gen. Stat. § 105-283 (2005) states, in relevant part:

> All property, real and personal, shall as far as practicable be appraised or valued at its true value in money. When used in this Subchapter, the words 'true value' shall be interpreted as meaning market value, that is, *the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller*, neither being under any compulsion to buy or to sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used.

(Emphasis supplied). N.C. Gen. Stat. § 105-317(a)(2) (2005) provides the factors the tax assessor must consider during appraisal:

> (a) Whenever any real property is appraised it shall be the duty of the persons making appraisals:
>
> . . . .
>
> (2) In determining the true value of a building or other improvement, to consider at least its location; type of construction; age; *replacement cost*; *cost*; adaptability for residence, commercial, industrial, or other uses; past income; probable future income; and *any other factors that may affect its value*.

(Emphasis supplied).

Real property is statutorily defined as "buildings, structures, improvements, and permanent fixtures on the land, and *all rights and privileges belonging or in any way appertaining to the property*." N.C. Gen. Stat. § 105-273(13) (2005) (emphasis supplied). After thorough review of the record, we hold the non-refundable membership fee is a right and privilege "belonging" or "appertaining to" the Tillmans' property and was properly included in its tax appraisal value. *Id.*

### V. Analysis

The Tillmans received delivery of a general warranty deed recorded on 5 August 2004. The deed states, in relevant part:

> Grantee, by accepting this Deed, hereby assumes and agrees to be bound by and comply with all the terms of the Declaration of

Condominium, the Bylaws of The Cedars of Chapel Hill Condominium Association, any Rules and Regulations made thereunder, including, but not limited to, the obligation to pay assessments which may be levied against said Unit for the maintenance and operation of the condominium, and *the terms of the Membership Agreement for The Cedars of Chapel Hill Club, Inc.*, including, but not limited to, the obligation to collect upon resale of said Unit a membership fee payable to said Club in the amount of percent [sic] ten percent (10%) of the gross sales price as more particularly described in said Membership Agreement.

(Emphasis supplied). The deed expressly binds the Tillmans to the terms contained in the Membership Agreement. The Membership Agreement "outlines the membership *rights, obligations, and services* derived from the membership." (Emphasis supplied). The Membership Agreement requires all owners and residents to purchase a nontransferable membership for their use or for use by an approved designee simultaneously with the purchase of their real property. "As outlined in the Membership Agreement, the membership *entitles* the purchaser to the use of the clubhouse facilities, specific services, and to be provided with health care in the health center when the purchaser is no longer capable of independent living." (Emphasis supplied).

Upon resale of the residence, the purchase price *must* include the subsequent purchaser's membership fee. The Reservation Agreement also expressly requires purchasers to enter into and sign the Membership Agreement as a condition of purchasing real property located at the Cedars. Based on the language contained in the Reservation Agreement, Membership Agreement, and deed, the membership in the Cedars Club belongs and appertains to the Tillman's condominium unit and is a "factor[] that may affect its value." N.C. Gen. Stat. § 105-273(13); N.C. Gen. Stat. § 105-317(a)(2).

Further, the "true value" of the Tillmans' property is "the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller . . . ." N.C. Gen. Stat. § 105-283. The Tillmans were required to pay ten percent of the purchase price of the real property as a membership fee. Upon resale of the property, the Tillmans are obligated to include the subsequent purchaser's membership fee in the purchase price and the purchaser must become a member of the Cedars Club. The estimated amount of money, which will change hands between the

**IN RE APPEAL OF TILLMAN**

[187 N.C. App. 739 (2007)]

Tillmans and a subsequent purchaser, is directly tied to the purchase price of the unit and includes the value of the non-refundable membership fee.

The non-refundable membership fee is a right and privilege "belonging" or "appertaining to" the Tillman's property and is a "factor[] that may affect its value." N.C. Gen. Stat. § 105-273(13); N.C. Gen. Stat. § 105-317(a)(2). The tax appraised value was properly assessed. The Tillmans failed to produce competent, material, and substantial evidence that Durham County used an arbitrary or illegal method of valuation and that "the assessment *substantially* exceeded the true value in money of the property." *AMP*, 287 N.C. at 563, 215 S.E.2d at 762 (emphasis in original). "If a taxpayer fails to present evidence sufficient to meet its burden as to either prong, the appeal fails." *Greens of Pine Glen*, 356 N.C. at 647, 576 S.E.2d at 319. This assignment of error is overruled.

## VI. Conclusion

Membership in the Cedars Club is an express requirement of owning real property situated in the Cedars. The real property at issue cannot be purchased or sold apart from the inclusion of the non-refundable membership fee. The value of the membership fee was properly included in the real property's assessed value. The Commission properly concluded that the Tillmans failed to produce competent, material, and substantial evidence that Durham County used an arbitrary or illegal method of valuation and the assessment substantially exceeded the true value in money of the property. *AMP*, 287 N.C. at 563, 215 S.E.2d at 762. The Commission's final decision is affirmed.

Affirmed.

Judges JACKSON and STROUD concur.