IN THE MATTER OF: APPEAL OF PARKDALE AMERICA, FROM THE DECISION OF THE DAVIDSON COUNTY BOARD OF EQUALIZATION AND REVIEW CONCERNING THE VALUATION OF CERTAIN REAL PROPERTY FOR THE TAX YEAR 2007

No. COA10-453

(Filed 17 May 2011)

**Taxation— Property Tax Commission—findings and conclusions—not sufficient**

A decision of the Property Tax Commission affirming appraised values was remanded for specific findings and conclusions where the Commission's order did not explain why the County's methods ascertained true value despite being arbitrary or illegal.

Appeal by taxpayer from final decision entered 3 November 2009 by the North Carolina Property Tax Commission. Heard in the Court of Appeals 26 October 2010.

*Parker Poe Adams & Bernstein LLP, by Charles C. Meeker, for respondent.*

*Bell, Davis & Pitt, P.A., by John A. Cocklereece, Jr., D. Anderson Carmen, and Justin M. Hardy, for taxpayer.*

HUNTER, JR., Robert, N., Judge.

Parkdale America, LLC ("Parkdale") appeals from a final decision of the Property Tax Commission upholding Davidson County's (the "County") 2007 ad valorem property tax valuation of two textile mills located in Lexington and Thomasville, North Carolina. Parkdale contends the County's valuation exceeds the properties' true value in violation of N.C. Gen. Stat. § 105-283. Parkdale attributes this violation to the County's reliance on the cost approach method, failure to properly deduct the value lost due to obsolescence, and failure to undertake a "post-market reasonableness check." Parkdale also argues the Commission's decision is arbitrary and capricious because it does not contain a "reasoned analysis." We agree with this latter contention and therefore do not address Parkdale's other arguments.

## I. Factual and Procedural Background

Parkdale owns two textile manufacturing plants in Davidson County. The County assessed the total value of the Lexington plant as of 1 January 2007 at $6,776,160 and the total value of the Thomasville

IN RE APPEAL OF PARKDALE AM.

[212 N.C. App. 192 (2011)]

plant as of 1 January 2007 as $3,620,080. Parkdale appealed both valuations to the Davidson County Board of Equalization and Review (the "Review Board"), which reduced the appraised value to $5,040,429 for the Lexington plant and $3,287,150 for the Thomasville plant. Parkdale contended before the Review Board that the true value for the Lexington plant was $906,000 and the true value of the Thomasville plant was $625,000.

After a hearing, the Commission determined "that the County had met its burden with regard to the assessments of the Lexington and Thomasville manufacturing facilities" and affirmed the appraised values established by the Review Board. Parkdale timely appealed this ruling.

## II. Jurisdiction

We have jurisdiction over Parkdale's appeal of right. *See* N.C. Gen. Stat. § 7A-29 (2009) (stating a party has an appeal of right from any final order of the Property Tax Commission); N.C. Gen. Stat. § 105-345(d) (2009) (stating such an appeal shall be to this Court).

## III. Standard of Review

When reviewing decisions of the Commission, this Court

> may affirm or reverse the decision of the Commission, declare the same null and void, or remand the case for further proceedings; or it may reverse or modify the decision if the substantial rights of the appellants have been prejudiced because the Commission's findings, inferences, conclusions, or decisions are:
>
> (1) In violation of constitutional provisions; or
>
> (2) In excess of statutory authority or jurisdiction of the Commission; or
>
> (3) Made upon unlawful proceedings; or
>
> (4) Affected by other errors of law; or
>
> (5) Unsupported by competent, material and substantial evidence in view of the entire record as submitted; or
>
> (6) Arbitrary or capricious.

N.C. Gen. Stat. § 105-345.2(b) (2009). Like other questions of law, whether a decision is arbitrary and capricious is reviewed *de novo*. *See, e.g., Transcon. Gas Pipe Line Corp. v. Calco Enters.*, 132 N.C. App. 237, 244, 511 S.E.2d 671, 677 (1999).

**IN RE APPEAL OF PARKDALE AM.**

[212 N.C. App. 192 (2011)]

We review Commission decisions under the whole record test to determine whether a decision has a rational basis in the evidence. *In re McElwee*, 304 N.C. 68, 87, 283 S.E.2d 115, 127 (1981) (quoting *In re Rogers*, 297 N.C. 48, 65, 253 S.E.2d 912, 922 (1979)).

> The "whole record" test does not allow the reviewing court to replace the [Commission's] judgment as between two reasonably conflicting views, even though the court could justifiably have reached a different result had the matter been before it *de novo*. On the other hand, the "whole record" rule requires the court, in determining the substantiality of evidence supporting the [Commission's] decision, to take into account whatever in the record fairly detracts from the weight of the . . . evidence. Under the whole evidence rule, the court may not consider the evidence which in and of itself justifies the . . . result, without taking into account the contradictory evidence or evidence from which conflicting inferences could be drawn.

*Id.* at 87-88, 283 S.E.2d at 127 (citations omitted). However, this Court cannot reweigh the evidence presented and substitute its evaluation for the Commission's. *In re AMP*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). If the Commission's decision, considered in light of the foregoing rules, is supported by substantial evidence, it cannot be overturned. *In re Philip Morris U.S.A.*, 130 N.C. App. 529, 533, 503 S.E.2d 679, 682 (1998).

### IV. Analysis

The Commission is required to apply the following burden shifting framework. A county's ad valorem tax assessment is presumptively correct. *In re IBM Credit Corp. (IBM Credit II)*, —— N.C. App. ——, ——, 689 S.E.2d 487, 489 (2009). The taxpayer rebuts this presumption by presenting " 'competent, material[,] and substantial' evidence that tends to show that (1) [e]ither the county tax supervisor used an arbitrary method of valuation; or (2) the county tax supervisor used an illegal method of valuation; and (3) the assessment substantially exceeded the true value in money of the property." *Id.* (quoting *In re AMP*, 287 N.C. at 563, 215 S.E.2d at 762) (second alteration in original). Once the taxpayer rebuts the initial presumption, the taxing authority must demonstrate its methods produce true values. *Id.*

The critical inquiry in the final step of the analysis is "whether the tax appraisal methodology adopted by the tax appraiser is the proper means or methodology given the characteristics of the property under appraisal to produce a true value or fair market value." *Id.* at

——, 689 S.E.2d at 489 (internal quotation marks omitted). Whether this is the case is not determined by a mechanical bright line rule. Rather, it is a factual inquiry requiring the Commission to determine the appropriate appraisal methodology under the circumstances. *See id.*

In its appeal, Parkdale contends that the County's appraisal methodology was arbitrary and capricious because it relied solely on the cost approach to valuation and failed to apply this approach in the manner specified by its schedule of values in that the County failed to properly compute the value lost due to obsolescence and failed to undertake a "post-market reasonableness check" of the values the methodology produced. Parkdale further contends that, because this methodology was arbitrary and capricious, the resulting values were as well. Therefore, Parkdale argues, the Commission's decision in support of these values is both arbitrary and capricious, in part because it does not contain a reasoned analysis and in part because it is unsupported by competent evidence.

North Carolina law directs tax assessors to prepare "[u]niform schedules of values, standards, and rules to be used in appraising real property at its true value and at its present-use value[, which] are prepared and are sufficiently detailed to enable those making appraisals to adhere to them in appraising real property." N.C. Gen. Stat. § 105-317(b)(1) (2009). Generally, real property subject to taxation is appraised according to its true value. N.C. Gen. Stat. § 105-283 (2009); *In re Whiteside Estates, Inc.*, 136 N.C. App. 360, 365, 525 S.E.2d 196, 198 (2000). True value is "market value," that is, "the price estimated in terms of money at which the property would change hands between a willing and financially able buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of all the uses to which the property is adapted and for which it is capable of being used." *In re AMP*, 287 N.C. App. at 568, 215 S.E.2d at 765.

The County adopted a schedule of values for the 2007 Tax Year that successfully follows the uniform system of appraisal required by the statute. To arrive at its appraised value for industrial property, the County used standardized mass appraisal techniques by compiling a database from cost manuals and residential, commercial, and industrial sales comparisons throughout Davidson County and by establishing a base rate or per-square-foot price for each type of property. The appraised value of an individual property is obtained by multiplying that base rate by the square footage of the type of structure

IN RE APPEAL OF PARKDALE AM.

[212 N.C. App. 192 (2011)]

thus determining a preliminary value and then deducting from that value depreciation or other relevant factors.

For example, the Lexington plant was originally assigned a value of $6,776,160. This figure was obtained by multiplying the base rate for industrial buildings contained in the Davidson County schedule of values by the square footage in the Lexington plant. The County then applied a 70% depreciation to this amount based upon the age of the buildings. After a challenge before the Davidson County Board of Equalization and Review, this initial assessment was reduced to $5,040,429 by applying an additional 10% functional depreciation rate.

The Commission's 3 November 2009 order makes the following findings of fact and conclusions of law:

11. When arriving at the assessments for the Lexington and Thomasville manufacturing facilities, Davidson County applied its duly 2007 adopted schedule of values, standards, and rules to determine the values that were assigned to the manufacturing plants.

12. Applying the schedule of values, standards, and rules the total assessment for the Lexington Plant was $5,040,429, as of January 1, 2007. Applying the schedule of values, standards, and rules the total assessment for the Thomasville Plant was $3,287,150, as of January 1, 2007.

13. Davidson County's assessments of the Lexington and Thomasville Plants were consistent with the county's assessment of similarly situated manufacturing facilities in Davidson County as of January 1, 2007.

14. The Commission determines that the total value of the Thomasville Plant was $3,287,150, as of January 1, 2007. The Commission determines that the total value of the Lexington Plant was $5,040,429, as of January 1, 2007.

BASED UPON THE FOREGOING FINDINGS OF FACT, THE NORTH CAROLINA PROPERTY TAX COMMISSION CONCLUDES AS A MATTER OF LAW:

1.   When an appellant challenges the county's assessment of its property, it is required to produce evidence that tends to show that the County relied on an illegal or arbitrary valuation method and that the assessment substantially exceeds true value of the property.

2.   After the appellant produces such evidence as outlined above, the burden of going forward with the evidence and of per-

suasion that its methods would in fact produce true value then rests with the County; and it is the Commission's duty to hear the evidence of both sides, to determine its weight and sufficiency and the credibility of witnesses, to draw inferences, and to appraise conflicting and circumstantial evidence, all in order to determine whether the County met its burden.

3. After considering all of the testimony, and reviewing the exhibits offered at the hearing, the Commission concludes that the County met its burden with regard to the assessments of the Lexington and Thomasville manufacturing facilities.

BASED UPON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, THE COMMISSION THEREFORE ORDERS that the decisions of the 2007 Davidson County Board of Equalization and Review assigning a total value of $5,040,420 [sic] to the Lexington facility and a total value of $3,287,150 to the Thomasville facility, effective January 1, 2007 is hereby affirmed.

Although the Commission's order does not explicitly contain the language that the County obtained the presumption of correctness by its initial tender of evidence of its values, we deduce from the language in paragraph 2 above that the Commission properly applied this presumption. We also deduce that Parkdale presented sufficient evidence to rebut this presumption by showing that the County relied on an illegal or arbitrary valuation method and that the assessment substantially exceeds the true value of the property. This second deduction is not based upon any direct statement to that effect contained in the order. Unfortunately, there is no such language. Rather, we reach this conclusion based upon paragraph 3 of the Commission's conclusions of law, which states that the "County met its burden." If the Commission is properly applying the burden shifting framework set forth in conclusion of law paragraph 1, then, in order for the Commission to reach the ultimate conclusion stated in paragraph 3 (that the County had met its burden), it logically follows the Commission must have concluded Parkdale produced competent evidence tending to show the County relied on an illegal or arbitrary valuation method and that the assessment substantially exceeds the true value of the property.

The order has no finding or conclusion of law explaining why the County's methods were arbitrary or illegal and how either of those results impacted the valuation finding. More importantly, the order does not explain why the Commission concluded the County's ulti-

mate assessment was correct. Because the Commission failed to explain why the County's appraisal methods ascertained true value despite being arbitrary or illegal, we cannot adequately apply the standard of review.

The lack of findings undermines our confidence in the Commission's conclusion that the County has met its ultimate burden of establishing a true value. *Cf., e.g., In re IBM Credit Corp. (IBM Credit I)*, 186 N.C. App. 223, 227, 650 S.E.2d 828, 831 (2007) (stating that the Commission's analysis did not reflect the proper burden-shifting framework) *aff'd per curiam*, 362 N.C. 228, 657 S.E.2d 355 (2008). Therefore, we vacate and remand this case to the Commission, which may conduct additional hearings on this matter if it deems them necessary. On remand, the Commission *shall* make specific findings of fact and conclusions of law explaining how it weighed the evidence to reach its conclusions using the burden-shifting framework articulated above and in this Court's previous decisions.

Vacated and remanded.

Judges McGEE and BEASLEY concur.