An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-623
NORTH CAROLINA COURT OF APPEALS

Filed:  4 February 2014


IN THE MATTER OF THE APPEAL OF:

| | |
|---|---|
| 109 KINSALE LAND TRUST | North Carolina Property Tax Commission |
| | No. 11 PTC 944 |
| From the decision of the Durham County Board of Equalization and Review regarding the valuation of certain real property for tax year 2011. | |


Appeal by taxpayer from final decision entered 10 December 2012 by the North Carolina Property Tax Commission.  Heard in the Court of Appeals 23 October 2013.


      *Manning Fulton & Skinner P.A., by William S. Cherry, III, and Michael T. Medford, for taxpayer-appellant.*

      *Office of the Durham County Attorney, by Assistant County Attorney Marie Inserra, for respondent-appellee Durham County.*


CALABRIA, Judge.


This appeal by 109 Kinsale Land Trust ("taxpayer") is an appeal from a Final Decision ("Final Decision") of the North Carolina Property Tax Commission ("the Commission") upholding the Durham County Board of Equalization and Review's ("Review

Board") property tax valuation of residential property and granting Durham County's motion to dismiss. We vacate and remand.

## I. Background

Taxpayer owns an improved residential property located in The Oaks subdivision at 109 Kinsale Drive, Chapel Hill, North Carolina 27517 ("the property"). The property is a 6,583 square foot single family residence situated on .80 acres of land located in a subdivision in the southwest portion of Durham County that borders Chapel Hill, North Carolina. Since the subdivision is situated on the line between Durham and Orange counties, some of the homes in the subdivision are located in Durham County and others are located in Orange County.

The property originally sold in 1999 for $522,500. Although there were no improvements or additions from 1999 to 2001, the property was valued for tax purposes in 2001 at $561,000. Taxpayer purchased the property on 13 January 2011 for $525,000.

On 1 January 2008, Durham County ("the County") reappraised the property and valued it at $1,086,842. In tax year 2011, taxpayer appealed the County's assessment to the Review Board. On 6 October 2011, the Review Board reassigned the property a

total value of $914,684. Taxpayer appealed the Review Board's decision to the Commission, alleging an arbitrary method of valuation was used to determine the property's value that resulted in an assessment that substantially exceeded the true value of money for the property. According to taxpayer, the true value of the property as of 1 January 2008 was $610,000.

On 16 August 2012, the Commission heard taxpayer's appeal. Taxpayer appeared *pro se* through trustee Lee Lawrence, and the County was represented by counsel. Taxpayer presented evidence from Brett Leyburn ("Leyburn"), a certified North Carolina residential real estate appraiser who testified regarding the property's "inferior quality of construction," including structural issues such as bowing in the rear wall, different colors in the brick mortar, cracks in the bricks from settling, and standing water in the basement. Leyburn also testified that he valued the property using the sales comparison approach, and his responsibility was "to find the most comparable properties. County lines do not determine value." In selecting comparable properties, Leyburn sought "the most similar type properties with regard to location, quality, condition and site value." Leyburn valued the property at $610,000 as indicated by the sales comparison approach to value.

Taxpayer also presented evidence from the County's appraiser, Sheila Thompson ("Thompson"), an adverse witness. Taxpayer questioned her regarding the subjectivity of the County's choice of comparable sales in the Hope Valley subdivision, a completely different subdivision from The Oaks located approximately five miles from the property:

> Q: So, in your professional opinion, you selected – you chose to not use homes in the subdivision that were outside the county?
>
> A: Yes.
>
> Q: And while that's – would you say that's subjective?
>
> A: Yes.

The primary evidence offered by the County consisted of Thompson's cross-examination. On cross-examination, Thompson testified regarding her use of the Durham County Schedule of Values, and that in her professional opinion the property's value was $914,684. Specifically, Thompson indicated that her exclusive use of Durham County properties in the comparative sales approach was related to the County's Schedule of Values:

> Q: Please just tell the Commission briefly, for the record, about [the County's] Schedule of Values.
>
> A: Our Schedule of Values are based on Durham County market analysis, January 1, 2008, and they are only comprised of Durham

County sales.

Q: And that is why, as a guideline, all Durham County appraisers look to comparables within Durham County?

A: Yes.

Q: And when we talk about what Durham County is going to assess an unfinished basement space, that's going to be guided by the Durham County Schedule of Values, which was passed by the Durham County Board of Commissioners, which has no relevance in Chapel Hill, which is Orange County?

A: Correct.

Thompson also testified regarding certain conditions on the property that influenced her valuation:

Q: And you have taken into – in fact, you were critical in your appraisal – critical, I mean, significance – in reducing the value of 109 Kinsale for all of the conditions that Mr. Lawrence mentioned today, with the exception of structural integrity, correct?

A: Yes.

Q: And you made some dramatic changes – reductions in value?

A: Yes.

Q: From $1,000,089 to 914. And you even indicated that you would – if it warranted and provided a proof of cost to cure, you would make any other changes that there was evidence to support?

A: Yes.

At the conclusion of the evidence, the Commission granted the County's oral motion to dismiss for taxpayer's failure "to meet the burden of production to show by material and competent evidence that the County's appraisal was arbitrary or capricious or illegal and exceeded true value." In the Commission's Final Decision on 10 December 2012, the Commission affirmed the County's assigned value of $914,684 and stated that "Durham County met its burden of going forward with the evidence and of persuasion that its valuation method did in fact produce true value of the property[.]" Taxpayer appeals.

## II. Jurisdiction

A party has an appeal as of right from any final order of the Property Tax Commission. N.C. Gen. Stat. § 7A-29 (2011). *See* N.C. Gen. Stat. § 105-345(d) (2011) (stating an appeal of the Commission's final order shall lie with this Court).

## III. Standard of Review

When reviewing decisions of the Commission, this Court may affirm or reverse the Commission's decision, remand the case for further proceedings, or reverse or modify the decision if "the substantial rights of the appellants have been prejudiced because the Commission's findings are . . . [u]nsupported by competent, material and substantial evidence in view of the

entire record as submitted" or arbitrary or capricious. N.C. Gen. Stat. § 105-345.2 (b) (2011). "[W]hether a decision is arbitrary and capricious is reviewed *de novo.*" *In re Parkdale America*, 212 N.C. App. 192, 193, 710 S.E.2d 449, 450 (2011) ("*Parkdale I*") (citation omitted). "In making the foregoing determinations, the court shall review the whole record or such portions thereof as may be cited by either party[.]" N.C. Gen. Stat. § 105-345.2 (c) (2011).

"The whole record test only allows [this Court] to determine whether the decision of the Commission was based on substantial evidence. The weight and credibility of the evidence remains for the Commission." *In re Lane Co. – Hickory Chair Div.*, 153 N.C. App. 119, 128, 571 S.E.2d 224, 229 (2002). "If the Commission's decision, considered in the light of the foregoing rules, is supported by substantial evidence, it cannot be overturned." *In re Philip Morris U.S.A.*, 130 N.C. App. 529, 533, 503 S.E.2d 679, 682 (1998) (citation omitted).

## IV. Discussion

As an initial matter, taxpayer argues that the Commission's decision was arbitrary and capricious, "lack[ing] a rational basis in fact[.]" However, because there are no findings in the Final Decision addressing the weight of taxpayer's evidence or

the County's valuation methods, we cannot properly address this argument under the applicable standard of review.

Taxpayer also argues that the written Final Decision is inconsistent with the proceedings at the hearing, and the Commission's conclusion that the County carried its burden of persuasion that its valuation methods produced true value is arbitrary and capricious. We agree.

A county's *ad valorem* tax assessment is presumptively correct. *In re AMP, Inc.*, 287 N.C. 547, 562, 215 S.E.2d 752, 761 (1975). "This presumption may be rebutted by material, substantial, and competent evidence that an arbitrary or illegal method of valuation was used and the assessment substantially exceeded the true value in money of the property." *Philip Morris U.S.A.*, 130 N.C. App. at 533, 503 S.E.2d at 682 (citations omitted). "[I]t is not enough for the taxpayer to show that the means adopted by the tax supervisor were wrong, he must also show that the result arrived at is *substantially* greater than the true value in money of the property assessed, i.e., that the valuation was *unreasonably* high." *In re Appeal of Parkdale Mills*, ___ N.C. App. ___, ___, 741 S.E.2d 416, 419-20 (2013) (quoting *In re AMP*, 287 N.C. at 563, 215 S.E.2d at 762) ("*Parkdale II*"). If the taxpayer rebuts the initial

presumption, the burden shifts to the County, which must then demonstrate that its methods produce true values. *In re IBM Credit Corp.*, 201 N.C. App. 343, 345, 689 S.E.2d 487, 489 (2009) (citation omitted).

In *Parkdale I*, 212 N.C. App. 192, 710 S.E.2d 449, the taxpayer appealed the Commission's final decision ("the order") upholding Davidson County's *ad valorem* property tax valuation of two textile mills because the county's valuation exceeded the properties' true value. 212 N.C. App. at 192, 710 S.E.2d at 450. Although the order stated that Davidson County had met its burden, no language in the order indicated Parkdale had presented sufficient evidence to rebut the presumption of correctness. *Id.* at 197, 710 S.E.2d at 452-53. In addition, the order lacked findings of fact and conclusions of law explaining why Davidson County's methods were arbitrary or illegal. *Id.*, 710 S.E.2d at 453. "More importantly, the order [did] not explain why the Commission concluded the County's ultimate assessment was correct." *Id.* at 197-98, 710 S.E.2d at 453. This Court remanded the case to the Commission because the findings in the Commission's final decision failed to explain the respective burdens of the parties. "Because the Commission failed to explain why the County's appraisal methods ascertained

true value despite being arbitrary or illegal," this Court vacated the order and remanded for specific findings explaining how the Commission weighed the evidence to reach its conclusions. *Id*. at 198, 710 S.E.2d at 453.

In the instant case, the Commission's Final Decision includes language reciting the presumption of correctness, refers to the burden shifting framework, and grants the County's motion to dismiss. According to the Commission, "Durham County met its burden of going forward with the evidence and of persuasion that its valuation method did in fact produce true value of the property[.]" However, the Commission here, just as in *Parkdale I*, failed to make findings explaining how taxpayer rebutted the presumption, or how the County met its burden afterward. Instead, the findings are simply a recitation of some of the hearing testimony and do not explain how the Commission weighed the evidence to reach its conclusions.

Leyburn, as taxpayer's independent appraiser, testified that the County did not properly consider a number of issues with the property. However, the written findings attribute Leyburn's testimony to Thompson. Thompson testified that the County did in fact consider those issues in valuing the property. In addition, the Commission found that Thompson

testified that the County's Schedule of Values was considered in the valuation, and that "she reviewed comparable sales in Durham County and not Orange County because those sales were comparable to the property and provide supporting evidence that Durham County properly assessed" the property.

While these findings effectively summarize the testimony presented at the hearing, there is no indication in the findings themselves that the Commission properly applied the burden shifting analysis in reaching its conclusion. Instead, the only indication that the Commission applied the burden shifting analysis comes in the unsupported final conclusion indicating that the County had met its burden. Because the County enjoys a presumption of correctness, the County had no burden to meet unless taxpayer first showed the valuation to be arbitrary or illegal. *Philip Morris U.S.A.*, 130 N.C. App. at 533, 503 S.E.2d at 682. However, the Commission made no findings that taxpayer had shown the valuation to be arbitrary or illegal, and made no findings regarding how the County showed its valuations established the property's true value. "The lack of findings undermines our confidence in the Commission's conclusion that the County has met its ultimate burden of establishing a true value." *Parkdale I*, 212 N.C. App. at 198, 710 S.E.2d at 453

(citation omitted).    We therefore vacate and remand to the Commission.

## V. Conclusion

While the Commission's findings summarize the testimony of the appraisers at the hearing, there are no findings addressing whether or how taxpayer rebutted the County's presumption of correctness.  Additionally, there are no findings addressing how the County met its burden of showing that its appraisal methods produced true value, despite a conclusion indicating that the County bore and met a burden of proof.  The lack of specific findings is the result of a lack of competent, material, and substantial evidence regarding how taxpayer's evidence was evaluated and how the Commission properly applied the burden shifting analysis.    We therefore vacate and remand to the Commission for further proceedings with specific findings of fact supported by competent, material, and substantial evidence.

Vacated and remanded.

Judges HUNTER, Robert C. and HUNTER, JR., Robert N. concur.

Report per Rule 30(e).